```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

CHEN GANG, et al.,                 :
     Plaintiffs,                   :
V.                                 :    CASE NO. 3:04CV1146 (RNC)
ZHAO ZHIZHEN, et al.,              :
     Defendants.                   :
```

RULING AND ORDER

Plaintiffs, on behalf of themselves and others similarly situated, bring this action pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Torture Victims Protection Act ("TVPA"), 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note), alleging that the named defendant Zhao Zhizhen has committed torts in violation of international and domestic law. The defendant is alleged to be liable under theories of aiding and abetting, command responsibility, and conspiracy for torture, arbitrary arrest and detention, crimes against humanity and violation of the rights to life, liberty, security of persons and peaceful assembly and association.  Plaintiffs also bring state law claims of negligent and intentional infliction of emotional distress.  The defendant has moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Because subject matter jurisdiction is lacking under the ATS, the motion to dismiss (ECF No. 91) is granted.

I.  <u>Background</u>

Plaintiffs' second amended complaint ("SAC") alleges the following.  Plaintiffs are all residents of the Peoples Republic of China, refugees from that country, or aliens who visited that country.  SAC (ECF No. 85) ¶¶ 1, 15.  In China, primarily in the city of Wuhan, plaintiffs were subjected to persecution and human rights abuses due to their adherence to Falun Gong, a spiritual practice based on the teachings of Li Hongzhi.  <u>Id.</u> ¶¶ 2, 5.  The defendant, a Chinese citizen, "exercised authority over media and related brainwashing and propaganda activities of the People's Republic of China," <u>id.</u> ¶ 16, as part of a "nationwide . . . crackdown against Falun Gong practitioners."  <u>Id.</u> ¶ 5.

The defendant, in his capacity as the former chief of the state-owned Wuhan Radio and TV Broadcasting Bureau ("WRTB"), and as the executive director of Wuhan Television Station ("WTV"), "produced, scripted or aired anti-Falun Gong television shows and news reports inciting, encouraging, and supporting acts of torture and other major human rights abuses against the Plaintiffs."  <u>Id.</u> ¶ 18.  The defendant also founded and served as an executive of the China Anti-Cult Association ("CACA"), a private non-profit organization dedicated to the development and dissemination of training material describing how to "transform" Falun Gong practitioners through torture.  CACA operated a website that served as a "semiofficial database source, reference

and medium for the displays of all anti-Falun Gong material . . . viewed . . . not only in the cities of Beijing and Wuhan, but also in China at large."  Id. ¶ 19.

The SAC adds the following allegations.  Through the defendant's media campaign against Falun Gong, "[a]dherents of the religion were portrayed as a serious social and political threat to Chinese society, as an inhuman pestilence infesting China, and as . . . 'demonic' elements which had to be eliminated from Chinese society."  Id. ¶ 26.  Much of the propaganda the defendant employed "relied upon Cultural Revolution-style ideological terminology with specialized meanings in modern China."  Id.  For example, the defendant called for "douzheng" against Falun Gong and employed other terms that, "[t]o any Chinese citizen alive today . . . are unmistakably redolent of the greatest excesses of ideological hatred and persecution in modern Chinese history."  Id. ¶ 27.[1]  As chief editor of a daily WTV program "Light of Science", the defendant also created "Li Hongzhi-The Man and His Deed", a documentary that provided a template for Falun Gong persecution.  Id. ¶ 25.

Over the course of the nationwide douzheng incited by the defendant, plaintiffs and other Falun Gong practitioners were detained either in transformation facilities or in "reeducation-

---

[1] Plaintiffs translate douzheng to mean "persecutory campaign," which specifically includes the mental transformation of targeted groups through torture.

through-labor" camps in China for extended periods of time and made to watch anti-Falun Gong propaganda films, such as "Li Hongzhi-The Man and His Deed".  See id. ¶ 98.  They were also physically tortured by Chinese security forces: shocked with electric batons, handcuffed to beds while their bodies were stretched in opposite directions and hung from ceilings with handcuffs.  See id. ¶ 24.  The defendant "personally, and in collaboration with others, mobilized, instigated, ordered, [and] aided and abetted" these abuses.  Id. ¶ 3.

II.  Procedural History

Plaintiffs brought this case alleging that subject matter jurisdiction exists under the ATS, a "strictly jurisdictional" statute that "allows federal courts to recognize certain causes of action based on sufficiently definite norms of international law."  Kiobel v. Royal Dutch Petroleum, 133 S. Ct. 1659, 1664 (2013).  The defendant was served with the complaint while "in this country . . . as a temporary visitor."  SAC ¶ 3.  Following a motion to dismiss, plaintiffs filed the SAC.  The defendant then filed the present motion to dismiss the SAC, primarily on the ground that plaintiffs have failed to state a cognizable violation of international law sufficient to establish subject matter jurisdiction under the ATS.  While this motion was pending, the Supreme Court ruled in Kiobel that the ATS does not confer subject matter jurisdiction over international law

4

violations occurring solely within the territory of a foreign sovereign.  133 S. Ct. at 1669.  In light of the ruling in Kiobel, this Court requested supplemental briefing from the parties on the following questions: (1) whether the plaintiffs' ATS claims survive Kiobel; and (2) if the ATS claims fail, whether the remaining claims in this action must also be dismissed.  These matters have been briefed and the motion is ripe for decision.

III.   Discussion

After careful review of the SAC and the parties' submissions, it is apparent that the Court lacks jurisdiction over the plaintiffs' ATS claims.  In Kiobel, the Supreme Court relied on "a canon of statutory interpretation known as the presumption against extraterritorial application" and held that this presumption applies to all claims under the ATS.  Id. at 1664.  Even though the respondent corporations in Kiobel had American affiliates and allegedly engaged in heinous violations of international law against the Nigerian petitioners, including extrajudicial killing, torture and crimes against humanity, the Supreme Court held that jurisdiction was lacking under the ATS because "all the relevant conduct took place outside the United States."  Id. at 1669.  The Court noted that "even where claims touch and concern the territory of the  United States, they must do so with sufficient force to displace the presumption against

extraterritorial application" in order to confer jurisdiction. Id.

The plaintiffs have seized on the Court's "touch and concern" language, arguing that their claims are distinguishable because they impact the United States to a greater extent than the claims in Kiobel, "a paradigmatic 'foreign-cubed' case — foreign defendant, foreign plaintiff, and exclusively foreign conduct — lacking any connection to the United States beyond 'mere corporate presence.'" Pls.' Supp. Br. (ECF No. 115) at 2. Plaintiffs argue that this case sufficiently touches and concerns the United States because (1) the defendant "specifically directed" his propaganda campaign toward United States citizens and residents -- through CACA's website, for example; (2) a refusal to provide redress for serious violations of international law would deprive the plaintiffs of the only relief available to them; and (3) there is no risk of international discord in this case because the U.S. Department of State has not indicated that the case should be dismissed. See id. at 7.

Despite plaintiffs' attempts to distinguish their claims from those in Kiobel, this case is also a paradigmatic "foreign-cubed" case. The plaintiffs are all "past or present residents of the People's Republic of China, or visitors to that country", SAC ¶ 1, the defendant is a Chinese citizen, id. ¶ 10, and the alleged violations of international law that the defendant

allegedly aided and abetted -- torture, arbitrary arrest and detention, crimes against humanity and violation of the rights to life, liberty, security of persons and peaceful assembly and association -- all took place entirely abroad, in "Mainland China."  See id. ¶ 2.  Under Kiobel, the ATS does not confer jurisdiction over such exclusively extraterritorial claims.  See Balintulo v. Daimler AG, 09-2778-CV L, 2013 WL 4437057, at *7 (2d Cir. Aug. 21, 2013) ("[C]laims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States."); Hua Chen v. Honghui Shi, 09 CIV. 8920 RJS, 2013 WL 3963735 (S.D.N.Y. Aug. 1, 2013) (finding no jurisdiction under the ATS over claims of "torture, genocide, violation of the right to life, arbitrary arrest and imprisonment, and violation of freedom of thought, conscience, and religion" brought by "members of the Falun Gong movement who currently reside in the United States" because "all of the abuses took place in China"); Ahmed-Al-Khalifa v. Minister of Interior, Fed. Republic of Nigeria, 5:13-CV-172-RS-GRJ, 2013 WL 3991961, at *2 (N.D. Fla. Aug. 2, 2013) ("In light of Kiobel, the ATS cannot confer subject-matter jurisdiction onto Plaintiff's claims because the violations at issue occurred outside the United States."); Ahmed-Al-Khalifa v. Trayers, 313-CV-00869CSH, 2013 WL 3326212, at *2 (D. Conn. July 1, 2013) ("The Alien Tort Statute cannot confer jurisdiction in this Court over

conduct committed outside of the United States."); Al Shimari v. CACI Int'l, Inc., 1:08-CV-827 GBL/JFA, 2013 WL 3229720, at *10 (E.D. Va. June 25, 2013) ("Plaintiffs' ATS claims are barred because the ATS does not provide jurisdiction over their claims, which involve tortious conduct occurring exclusively outside the territory of the United States."); Mohammadi v. Islamic Republic of Iran, CIV.A. 09-1289 BAH, 2013 WL 2370594, at *15 (D.D.C. May 31, 2013) ("[T]o the extent that the plaintiffs seek to pursue claims under the ATS . . . for conduct that occurred entirely within the sovereign territory of Iran, those claims are also barred under the holding of Kiobel."). Compare with Sexual Minorities Uganda v. Lively, 12-CV-30051-MAP, 2013 WL 4130756, at *2 (D. Mass. Aug. 14, 2013) (finding that the Kiobel restrictions on extraterritorial application of the ATS did not apply where the defendant was a citizen of the United States and where the alleged conduct occurred in substantial part within the United States).

   Even assuming the presumption against extraterritorial application could be displaced by "specifically directing" tortious conduct toward the United States, as plaintiffs argue, the SAC does not support displacement under such a theory. The tortious conduct relevant to the plaintiffs' ATS claims occurred in China and was directed toward people there. See SAC ¶ 5 ("The acts alleged herein against Plaintiffs were carried out in the

8

context of the nationwide douzheng crackdown against Falun Gong practitioners."); id. ¶ 26 ("Defendant . . . implemented a campaign of propaganda vigorously supporting and elaborating upon this call to persecute Falun Gong.  Adherents of the religion were portrayed as a serious social and political threat . . . which had to be eliminated from Chinese society.  Much of this invective, moreover, relied upon Cultural Revolution-style ideological terminology with specialized meanings in modern China.").  Any alleged conduct arguably directed at the United States, such as website opinion pieces attacking U.S. legislators for nominating Li Hongzhi for a Nobel Prize, see id. ¶ 63, does not touch and concern the United States with sufficient force to displace the presumption against extraterritorial application under Kiobel.  Compare with Mwani v. Bin Laden, CIV.A. 99-125 JMF, 2013 WL 2325166, at *4 (D.D.C. May 29, 2013) ("Surely, if any circumstances were to fit the Court's framework of 'touching and concerning the United States with sufficient force,' it would be a terrorist attack that 1) was plotted in part within the United States, and 2) was directed at a United States Embassy and its employees.").  "[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the

case."  Kiobel, 133 S. Ct. at 1669 (citing Morrison v. National Austrlia Bank Ltd., 130 S. Ct. 2869, 2884 (2010)).[2]

Because the alleged abuses occurred in China and do not sufficiently "touch and concern" the United States, the Court does not have subject matter jurisdiction over the plaintiffs' ATS claims.  Plaintiffs' argument regarding the necessity of providing redress for international law violations does not provide a basis for jurisdiction.  See Kiobel, 133 S. Ct. at 1668 ("[T]here is no indication that the ATS was passed to make the United States a uniquely hospitable forum for the enforcement of international norms.").  Nor does plaintiffs' prediction concerning the risk of international discord associated with this case.

Without subject matter jurisdiction under the ATS, the Court also lacks jurisdiction over plaintiffs' TVPA claim.  See Kadic v. Karadzic, 70 F.3d 232, 246 (2d Cir. 1995) ("Though the Torture Victim Act creates a cause of action for official torture, this statute, unlike the Alien Tort Act, is not itself a jurisdictional statute.").  In the absence of any federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims for intentional and negligent

---

[2] In their supplemental brief responding to Kiobel, the plaintiffs attempt to submit new claims and factual allegations.  As this is contrary to the Court's directive, the new claims and allegations will not be considered here.

infliction of emotional distress.  See New York Mercantile Exch., Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 119 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citing Marcus v. AT&T Co., 138 F.3d 46, 57 (2d Cir.1998)).

IV. Conclusion

    Accordingly, the defendant's motion to dismiss (ECF No. 91) is granted.

    So ordered this 20th day of September 2013.

                                      /s/RNC
                        Robert N. Chatigny
                   United States District Judge