```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT

CHEN GANG, et al.,              :
                                :
     Plaintiffs,                :
                                :
V.                              :    CASE NO. 3:04CV1146 (RNC)
                                :
ZHAO ZHIZHEN, et al.,           :
                                :
     Defendants.                :
```

RULING AND ORDER

Plaintiffs, on behalf of themselves and others similarly situated, seek leave to file a Third Amended Complaint ("TAC") following dismissal of the Second Amended Complaint ("SAC"). In dismissing the SAC, the Court ruled that plaintiffs' exclusively extraterritorial claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, did not survive the Supreme Court's decision in Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659 (2013), which held that the presumption against extraterritoriality applies to ATS claims. See Gang v. Zhizhen, No. 3:04cv1146(RNC), 2013 WL 5313411 (D. Conn. Sept. 20, 2013). The proposed TAC, which alleges violations of the ATS and the Torture Victim Protection Act ("TVPA"), 106 Stat. 73 (1992)(codified at 28 U.S.C. § 1350 note), as well as related state and federal law claims, seeks to add four new plaintiffs and additional allegations of conduct occurring in the United States. Defendant argues that the proposed TAC is futile under the relevant legal

1

standards and permitting its filing would cause substantial prejudice. I agree and therefore decline to grant leave to amend.

I. Background

Plaintiffs filed the initial complaint in this action in July 2004, bringing claims under the ATS and the TVPA. Defendant Zhao Zhizhen was served with the complaint while briefly in this country as a temporary visitor. An amended complaint was filed in September 2004. Defendant moved to dismiss, and the motion was extensively briefed and argued. Ultimately, plaintiffs were permitted to file the SAC. Defendant again moved to dismiss, arguing primarily that plaintiffs failed to state a cognizable violation of international law permitting the exercise of subject matter jurisdiction under the ATS. While the motion to dismiss the SAC was pending, the Supreme Court ruled in Kiobel that the presumption against extraterritoriality applies to claims under the ATS. 133 S. Ct. at 1664-65. After supplemental briefing regarding the impact of Kiobel on this litigation, the motion to dismiss the SAC was granted because the alleged conduct relevant to the ATS claims occurred in China and did not touch and concern the United States sufficiently to provide subject matter jurisdiction under Kiobel's test. At plaintiffs' urging, they were given an opportunity to file the present motion for leave to

amend the complaint to allege facts directed to the post-Kiobel legal landscape.

In the proposed TAC, plaintiffs allege that the named defendant is liable under theories of aiding and abetting, joint criminal enterprise, and conspiracy for torture, extrajudicial killing, crimes against humanity, prolonged and arbitrary detention, and violation of the rights to life, liberty, security of persons, freedom of thought, conscience, and religion and free association.  Plaintiffs further assert conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) and state law claims of wrongful imprisonment, assault, battery and negligent and intentional infliction of emotional distress.

II. Analysis

"[T]he decision to grant or deny a motion to amend rests within the sound discretion of the district court."  Henriquez v. Kelco Landscaping Inc., 12-CV-6233 (ADS)(GRB), 2014 WL 2048544, at *2 (E.D.N.Y. May 17, 2014).  Leave to amend may properly be denied for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment, among other reasons. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). Given the procedural history of this case, it would not be appropriate to grant leave to amend unless plaintiffs are able to demonstrate that the proposed TAC presents cognizable claims.

See <u>Absolute Activist Value Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60, 71 (2d Cir. 2012) ("[N]otwithstanding the change in doctrine, it would not be appropriate to grant leave to amend if doing so would be futile."). Plaintiffs fail to make this showing.

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. In <u>Kiobel</u>, the Supreme Court held that the presumption against extraterritoriality constrains federal courts from hearing causes of action under the ATS "seeking relief for violations of the law of nations occurring outside the United States." 133 S. Ct. at 1669. The Second Circuit has stated that "if all the relevant conduct occurred abroad, that is simply the end of the matter under <u>Kiobel</u>." <u>Balintulo v. Daimler AG</u>, 727 F.3d 174, 190 (2d Cir. 2013). <u>See also</u> <u>Chowdhury v. Worldtel Bangladesh Holding Ltd.</u>, 746 F.3d 42, 49-50 (2d Cir. 2014) (plaintiff's claim brought under the ATS barred by <u>Kiobel</u> because all the relevant conduct set forth in the complaint occurred in Bangladesh).

The SAC alleged that plaintiffs were subjected to violations of their human rights due to their adherence to the spiritual practice of Falun Gong. Zhao, a Chinese citizen, was alleged to have exercised authority over media and propaganda activities of the People's Republic of China as part of a nationwide crackdown

4

against Falun Gong practitioners. Specifically, plaintiffs alleged that the defendant, in his capacity as the former chief of the state-owned Wuhan Radio and TV Broadcasting Bureau ("WRTB"), the executive director of Wuhan Television Station ("WTV") and founder and executive of the China Anti-Cult Association ("CACA"), produced and disseminated anti-Falun Gong propaganda and provided a template for Falun Gong persecution. Plaintiffs and other Falun Gong practitioners were detained in transformation facilities and labor camps in China, made to watch anti-Falun Gong propaganda films - including a film created by the defendant - and brutally tortured. Zhao was alleged to have "personally, and in collaboration with others, mobilized, instigated, ordered, aided and abetted" these abuses. SAC (ECF No. 85) ¶ 3.

The proposed TAC seeks to modify the allegations in the SAC to include conduct occurring in and directed to the United States in order to state an ATS claim under Kiobel. Zhao is now alleged to have participated in a conspiracy aimed at suppressing the rights of Falun Gong practitioners worldwide, including in the United States. Zhao's own alleged activities include: creating anti-Falun Gong propaganda materials that were subsequently distributed in the United States; developing the China Anti-Cult Association's website, which was available in the United States; organizing and participating in trips to the United States

intended to build support for anti-Falun Gong intimidation activities; and "supervising or directing" the activities of CACA branch offices in the United States that provided "boots on the ground" for anti-Falun Gong activities in this country.  See, e.g., Pls.' Mot. for Leave to Amend (ECF No. 124) at 23-25. Plaintiffs allege that "[a]s a result of the widespread dissemination of materials by Zhao and his affiliates in the United States, Falun Gong adherents are commonly viewed as subhuman or demonic threats to society; they are frequently ostracized, stigmatized, subject to hate speech, intimidation, and violence and are barred from participating in civic activities such as parades, festivals and even the free use of public space."  Pls.' Reply (ECF No. 135) at 4.  The proposed TAC also seeks to add three plaintiffs who allegedly suffered violations of their rights in the United States, including harassment, threats and physical assaults.  TAC (ECF No. 150-1) ¶¶ 17-19.  These plaintiffs seek to represent a class of Falun Gong practitioners residing in the United States who "have been subjected to various forms of persecution, organized and widespread assault or intimidation, and verbal and/or physical abuse on the basis of their religion, amounting to serious violations of their human rights."  Id. ¶ 23.

As was true of the SAC, the TAC's allegations do not charge conduct on the part of the defendant that touches and concerns

the United States with sufficient force to support an ATS claim after Kiobel.  The Court previously ruled that allegations that the defendant "'specifically directed' his propaganda campaign toward United States citizens and residents – through CACA's website, for example," are insufficient to survive after Kiobel. Chen Gang, 2013 WL 5313411, at *3.  The new allegations regarding the defendant's media- and propaganda-related activities in China add little of substance to the previous allegations concerning his activities there.  Because the new allegations concerning the defendant's activities in China are not materially different for purposes of applying the Kiobel standard, permitting plaintiffs to add these allegations would be futile.  See, e.g., Kaplan v. Cent. Bank of Islamic Republic of Iran, Civil No. 10-483(RCL), 2013 WL 4427943, at *16 (D.D.C. Aug. 20, 2013) (extraterritorial attacks did not touch and concern the territory of the United States with sufficient force to displace the presumption against extraterritorial application of the ATS where the attacks were not planned in the United States or specifically targeted at Americans, even though some of the individuals affected by the attacks were American).

    As to allegations of human rights violations occurring in the United States, plaintiffs do not plausibly allege violations of the laws of nations that, standing alone, rise to a level actionable under the ATS.  See Sosa v. Alvarez-Machain, 542 U.S.

692, 720 (2004) (explaining that the ATS provides jurisdiction over a "relatively modest set of actions alleging violations of the law of nations"); see also Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304, 315 (D. Mass. 2013) (explaining that under Sosa, a norm must be "sufficiently definite and historically rooted" to support a cause of action under the ATS). Allegations of persecution, standing alone, are insufficient. Id. at 316 ("It is doubtful whether the ATS would furnish jurisdiction for a claim of persecution alone; this claim under the common law would appear to lack the 'definite content and acceptance among civilized nations' within the 'historical paradigms familiar when § 1350 was enacted'" as required by Sosa). Although "persecution that rises to the level of a crime against humanity has repeatedly been held to be actionable under the ATS," id., the alleged conduct must "involve more than the 'intentional and severe deprivation of fundamental rights contrary to international law by reason of the identity of the group or collectivity,'" id. at 317 (quoting Rome Statute on the International Criminal Court art. 7(2)(g), July 1, 2002, 2187 U.N.T.S. 38544). Plaintiffs must further demonstrate that the persecution is part of a "widespread, systematic attack." Id. at 318. The allegations in the TAC are insufficient to meet this standard.

Nor do plaintiffs allege sufficient conduct in the United States by the defendant, a Chinese citizen, such that his conduct in this country might support an ATS claim even though its primary effect occurred overseas.  Compare Lively, 960 F. Supp. 2d at 310-11 (Kiobel not a bar to ATS claims where defendant was a United States citizen whose conduct occurred "in substantial part" in the United States, even though its primary effects were in Uganda).  Indeed, the proposed TAC alleges almost no conduct by the defendant himself in the United States, citing his "significant role in at least one of [CACA's] delegations as a proposed speaker who failed to appear for unknown reasons," and alleging "[u]pon information and belief, Zhao called for the violent suppression of Falun Gong and/or its being targeted as a terrorist group and dangerous threat to society during his 2001 speeches in the U.S. and during several of his other visits up to 2007." TAC (ECF No. 150-1) ¶ 164.

Finally, the allegations in the TAC about the effect of Zhao's propaganda materials and the actions of "his cohorts" in the United States do not state with the required specificity a plausible connection between defendant's conduct and the alleged harms suffered by plaintiffs in the United States.  See, e.g., TAC (ECF No. 150-1) ¶ 186 ("Zhao's actions and those of his cohorts exerted influence over local communities of Chinese in the United States, instigating members of such communities to

9

target and deprive of human and civil rights any Falun Gong adherents they could find, causing deprivation of rights and sometimes also acts of violent suppression.")

Citing an interest "in simplifying and expediting this litigation," plaintiffs have proposed voluntarily withdrawing their ATS claims if the Court permits further amendment to allow Chen Gang, Wenbo Zou and Does 1-3, in addition to Charles Lee, to bring claims under the TVPA. See Pls.' Notice Suppl. Authority (ECF No. 152) at 5 n.7; Pls.' Letter (ECF No. 154-1) at 1. Defendant opposes such a reconfiguration of plaintiffs' claims. See Def.'s Letter (ECF No. 156-1) at 1-2. I agree that the proposed TVPA claim of Charles Lee - the only TVPA claim in the TAC - would be futile.

The proposed complaint alleges that Lee, a U.S. citizen, was apprehended upon his arrival in China to visit friends and family in 2003, and was tortured, force-fed and detained until 2006. TAC (ECF No. 150-1) ¶ 16. Plaintiffs assert that "[t]he Defendant's anti-Falun Gong propaganda and other activities . . . instigated and resulted in these violations." Id.[1] Plaintiffs claim that defendant is secondarily liable for Lee's torture

---

[1] Specifically, the proposed TAC alleges that Zhao "is liable for the harm suffered by plaintiff Charles Lee in that he directly or through his agents, knowingly and intentionally aided and abetted or entered into a conspiracy or joint criminal enterprise with high-level Party leaders, CACA and Propaganda apparatus leadership, and other Party-controlled entities in Public Security officers in the unlawful conduct that led to the torture he endured." TAC (ECF No. 150-1) ¶ 276.

10

through the doctrine of command responsibility, under which a commander is liable for the acts of subordinates, even when the commander did not order the acts, if certain elements are present: (1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts in violation of the law of war; and (3) the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes. Mamani v. Berzain, 21 F. Supp. 3d 1353, 1376 (S.D. Fla. 2014).  Plaintiffs contend Zhao's positions gave him the requisite authority. See Pls.' Notice Suppl. Authority (ECF No. 152) at 4.  I agree with defendant, however, that plaintiffs fail to allege with the requisite specificity that Zhao occupied a position of control over the state police and prison personnel directly responsible for the torture.

Finally, plaintiffs seek to amend the complaint to add a claim under 42 U.S.C. § 1985(3), alleging that Zhao conspired with the CACA, including its foreign subsidiaries and leaders of the diaspora community, "in discriminating, harassing, threatening, 'transforming,' and assaulting members of the Falun Gong community in the United States with the goal of depriving

Falun Gong practitioners in the United States of their civil rights, freedom of belief, freedom of association, and equal protection under the U.S. Constitution, federal law, and Connecticut state law."  TAC (ECF No. 150-1) at ¶ 270.  To prevail on such a claim, plaintiffs must establish: (1) the existence of a conspiracy; (2) for the purpose of depriving them, directly or indirectly, of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) injury to his person or property or deprivation of any right of a citizen of the United States.  Knight v. City of New York, 303 F. Supp. 2d 485, 501 (S.D.N.Y. 2004), aff'd, 147 F. App'x 221 (2d Cir. 2005).  Moreover, when, as here, the alleged conspiracy does not involve state action, "a plaintiff must show, inter alia, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993) (quotation marks and citations omitted).  The Supreme Court has recognized only two such rights: the right to be free from involuntary servitude and the right of interstate travel.  See Jenkins v. Miller, 983 F. Supp. 2d 423, 461 (D. Vt. 2013).  Neither is implicated here.  Plaintiffs urge that *intrastate*

travel may qualify, too, citing Spencer v. Casavilla, 903 F.2d 171 (2d Cir. 1990).  Spencer found that dismissal of a claim under 1985(3) was improper because the complaint alleged a "violation of Spencer's right to travel from place to place within New York State without being subjected to a racially motivated attack on account of his exercise of that right." Id. at 176.  Plaintiffs assert that the allegations of assaults, threats, and physical intimidation on public streets in Chinese communities across the United States are sufficient to state a similar claim of a violation of their right to travel freely to and within Chinese communities.  Pls.' Reply (ECF No. 135) at 22.  The TAC alleges threats, intimidation, and attacks against Falun Gong practitioners in the United States.  But these harms allegedly occurred in Falun Gong communities and religious centers, including at Falun Gong practitioner-organized rallies and religious gatherings, rather than as Falun Gong practitioners were attempting to exercise a right to travel.  See, e.g., TAC (ECF No. 150-1) ¶¶ 185-193.  Thus, the proposed amendment to add a claim under 42 U.S.C. § 1985(3) would be futile.

In addition to the apparent futility of the proposed amendments, the Court must be concerned about undue delay and prejudice to the defendant.  See O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 70 (2d Cir. 2002)("[C]onsiderations of undue delay . . . and prejudice to the opposing party [are] touchstones of a

district court's discretionary authority to deny leave to amend." (quoting Barrows v. Forest Labs., Inc., 742 F.2d 54, 58 (2d Cir. 1984))). Based on the parties' submissions, the Court finds that both factors weigh against granting leave to amend. With regard to undue delay, plaintiffs seek leave to amend in order to plead claims based on conduct that allegedly occurred well before the SAC was filed. There is no apparent reason why plaintiffs did not include the alleged conduct in the SAC. Given the age of this case, plaintiffs' delay in seeking leave to amend makes it difficult for the Court to grant their request. See, e.g., Sank v. City Univ. of New York, 112 F. App'x 761, 764 (2d Cir. 2004) (holding that "the district court did not abuse its discretion in refusing to permit" amendment to include claims "raised late in the litigation and not until eight to eleven years after they occurred"). More importantly, with regard to prejudice, the China-focused claims in the SAC did not provide notice that the defendant could be required to defend against the reformulated claims in the TAC, and he persuasively argues that it would be exceedingly difficult for him to obtain necessary discovery. Def.'s Opp'n (ECF 132-2) at 41-42. In these circumstances, the Court concludes that plaintiffs' desired amendments should not be permitted, notwithstanding the grave nature of the harms they allege. See In re Arab Bank, PLC Alien Tort Statute Litigation, 808 F.3d 144, 159-60 (2d Cir. 2015) (in litigation pending for

ten years, district court did not abuse its discretion in denying leave to amend because permitting plaintiffs to repackage their claims would do a disservice to the defendant).[2]

III. Conclusion

Accordingly, the motion for leave to amend (ECF No. 124) is hereby denied.  The Clerk may close the file.

So ordered this 31st day of March 2016.

                                                /s/ RNC
                                            Robert N. Chatigny
                                      United States District Judge

---

[2] To the extent plaintiffs seek leave to amend to add state law claims, the amendment would be futile because the only basis for jurisdiction would be diversity of citizenship, which would be lacking due to the presence of aliens on both sides of the litigation.  See In re Arab Bank, 808 F.3d at 160.