UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHEN GANG, ET AL.
    Plaintiffs,

v.                                CASE NO. 3:04-cv-1146(RNC)

ZHAO ZHIZHEN, ET AL.
    Defendants.

## RULING AND ORDER

Plaintiffs, adherents to the spiritual practice of Falun-Gong, bring this action on behalf of themselves and others alleging that they have been tortured in the People's Republic of China because of their religious beliefs. Pending is their motion for leave to file a third amended complaint ("TAC"), which would assert a claim against the defendant, Zhao Zhizhen, under the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350 note. Plaintiffs allege that the defendant is responsible for their torture due to his leadership role in "media and related brainwashing and propaganda activities of the People's Republic of China," as part of a nationwide "crackdown against Falun Gong Practitioners." TAC ¶ 5, 16. More precisely, they allege that he ran a number of state-owned media entities, and was a member of the standing committee of the Executive Council of the China Anti-Cult Association (CACA), which developed and disseminated anti-Falun Gong training materials, and advocated for "transforming" Falun Gong adherents through torture. Id. ¶¶ 10, 11. Plaintiffs allege that those who tortured them used some of

this propaganda in the course of committing torture. Id. ¶¶ 21, 22, 96, 98.

Plaintiffs' allegations, though grave, fail to state a claim on which relief can be granted here, for reasons discussed below. Because permitting leave to amend would therefore be futile, plaintiffs' motion must be denied. See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). Moreover, even if the plaintiffs could state a claim for relief, considerations of prejudice militate strongly against allowing them once again to amend their complaint, fourteen years into this litigation.

This case has unfolded against the backdrop of a changing legal landscape, which is the main reason it has been pending so long. See Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108 (2013); Sosa v. Alvarez-Machain, 542 U.S. 692 (2004). And it is apparent that the plaintiffs have invested substantial resources in the litigation. However, evidence and witnesses do become stale with time, and "the liberality with which a court grants leave to amend does not impart to litigants the privilege of re-shaping their legal theories endlessly, even where there is no evidence of improper motive or dilatory objectives." Sanders v. Thrall Car Mfg. Co., 582 F. Supp. 945, 953 (S.D.N.Y. 1983), aff'd per curiam, 730 F.2d 910 (2d Cir. 1984). The defendant has argued with some force that his ability to defend against the TVPA claim is undermined by the passage of time. Balancing the

2

parties' interests, I conclude that the risk of unfair prejudice to the defendant requires that leave to amend be denied.

I. Background.[1]

In 2013, the Second Amended Complaint ("SAC") was dismissed for lack of subject matter jurisdiction in light of the Supreme Court's then-recent decision in Kiobel, which clarified that the Alien Tort Statute ("ATS") does not apply to wholly extraterritorial claims. See Gang v. Zhao Zhizhen, No. 3:04cv1146(RNC), 2013 WL 5313411, at *2 (D. Conn. Sept. 20, 2013). Plaintiffs moved for leave to amend their complaint. The motion was denied initially in 2016 and on reconsideration in 2017. See Gang v. Zhao Zhizhen, No. 3:04cv1146(RNC), 2016 WL 1275026 (D. Conn. Mar. 31, 2016); Gang v. Zhao Zhizhen, No. 3:04cv1146(RNC), 2017 WL 4366967 (D. Conn. Sept. 30, 2017). Plaintiffs' proposed amended complaint would have added allegations regarding the effects of the defendant's alleged actions on U.S. territory in order to state a claim under the ATS. See ECF No. 124 at 7-8. Plaintiffs also sought to assert a number of TVPA claims against the defendant under theories of secondary liability. See ECF No. 167 at 4-11. I determined that permitting the plaintiffs to amend their complaint as proposed

---

[1] A fuller account of the plaintiffs' allegations and the procedural history can be found in Gang v. Zhao Zhizen, No. 3:04cv1146(RNC), 2013 WL 5313411 (D. Conn. Sept. 20, 2013).

3

would be futile, because they had not alleged sufficient facts to state a claim for relief. See Gang, 2016 WL 1275026, at *1; Gang, 2017 WL 4366967, at *1. I also determined that permitting them to add new allegations to their complaint would prejudice the defendant, who had not previously been on notice of the allegations. See Gang, 2016 WL 1275026, at *5; Gang, 2017 WL 4366967, at *1.

The TAC contains the same factual allegations as the SAC, but differs from the SAC primarily in its jurisdictional statement, which abandons reliance on the ATS, and instead asks the Court to exercise general federal question jurisdiction pursuant to 28 U.S.C. § 1331. See generally TAC.

II. Discussion

Unlike the ATS, the TVPA confers jurisdiction on federal courts over wholly extraterritorial claims. See Chowdury v. Worldtel Bangladesh Holding, Ltd., 746 F.3d 42, 51 (2d Cir. 2014). For reasons discussed below, however, the TVPA does not extend to plaintiffs' allegations against the defendant.

A. Aiding and Abetting Liability

Plaintiffs first seek to hold the defendant liable for aiding and abetting those who tortured them. Whether the TVPA provides for aiding and abetting liability has not yet been determined by the Second Circuit. See id. at 52 n.10 (declining

4

to resolve the question). Assuming it does, however, plaintiffs' allegations are insufficient to state a claim.

"Aiding-abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983); see also Doe v. Drummond Co., 782 F.3d 576, 608-09 (11th Cir. 2015) (applying this framework to TVPA). The allegations of the TAC do not satisfy the third requirement.

According to the TAC, "all of the named [p]laintiffs, and others similarly situated, have been subjected to torture as a means of 'transformation,' per instructions and guidelines provided by CACA training classes, manuals, lectures, books, and conferences, all under the defendant's supervision and control." TAC ¶ 19. The TAC details accounts of abuse against the individual plaintiffs, but only alleges the defendant's involvement insofar as he designed media programs they were forced to watch during the course of being tortured. See, e.g., TAC ¶ 20-24, 96, 98.

Careful review of the TAC shows that while the defendant's propaganda materials denigrated the practice of Falun-Gong and

5

could be understood to advocate the use of torture, the materials did not include torture manuals or instructions, or any particular tools that would have aided plaintiffs' physical abuse. TAC ¶¶ 82, 92, 95. As a result, plaintiffs cannot show that the defendant supplied substantial assistance to their torturers. Cf. Cabello v. Fernandez-Larios, 402 F.3d 1148, 1159 (11th Cir. 2005) (jury could conclude that defendant provided substantial assistance in torture when evidence showed that he served as bodyguard for officer carrying out torture, provided weapons used in torture, and selected torture victims); In re S. African Apartheid Litig., 617 F. Supp. 2d 228, 265 (S.D.N.Y. 2009) (defendants aided and abetted violation of the laws of nations when they created computer programs "specifically designed to produce identity documents and effectuate denationalization").

Plaintiffs may be claiming that they suffered mental anguish rising to the level of torture as a result of being forced to view the defendant's propaganda materials. See ECF No. 178 at 5; TAC ¶¶ 21-22. However, under the TVPA,

> mental pain or suffering refers to prolonged mental harm caused by or resulting from—
>     (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
>     (B) the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
>     (C) the threat of imminent death; or

6

> (D) the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

28 U.S.C. § 1350, note § 3(b)(3). None of these subsections applies to the defendant's activities in producing and disseminating the propaganda materials at issue.

    B. <u>Conspiracy</u>

Plaintiffs next contend that the defendant conspired to torture them. ECF No. 178 at 12. To prevail under this theory, plaintiffs would have to prove a meeting of the minds between their tormenters and the defendant. See <u>Webb v. Goord</u>, 340 F.3d 105, 110-11 (2d Cir. 2003). They sufficiently allege that the defendant and CACA coordinated with the Chinese Communist Party to degrade Falun Gong practitioners, foment anti-Falun Gong sentiment, and even to advocate for the use of torture. <u>See, e.g.</u>, TAC ¶¶ 33-42, 92. Nowhere, however, does the TAC assert the existence of any sort of agreement to commit torture.[2]

---

[2] Perhaps the closest the TAC comes to successfully alleging conspiracy to torture is in ¶ 104:

> The CACA website documents meetings hosted by CACA across China for members of various local communities. These meetings entailed the viewing of anti-Falun Gong propaganda and the holding of seminars and discussions. At the end of these meetings, the groups in attendance issued recommendations that the government employ measures punishing or even eradicating Falun Gong practitioners. . . .

7

Plaintiffs correctly observe that "[a] conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995). But the allegations of the TAC do not show that the defendant agreed, tacitly or otherwise, to carry out torture. As stated in a previous ruling, "shared membership in a massive Communist Party apparatus in China . . . is too tenuous to plausibly constitute an agency relationship." Gang, 2017 WL 4366967, at * 1. The same is true of a conspiracy. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565 (2007). As a result, plaintiffs have failed to sufficiently allege that the defendant is liable for violating the TVPA under a conspiracy theory.

C. Remaining Claims

Plaintiffs also assert claims for violation of the rights to life, liberty and security of person and peaceful assembly and association in connection with their arrests, detention and torture; intentional infliction of emotional distress; and negligent infliction of emotional distress. Because the first claim requires some connection between the defendant's alleged

---

TAC ¶104. This paragraph, however, does not allege that the defendant attended these meetings, or even mention him, referring only to materials that he might have created. Id.

8

actions and plaintiffs' arrest, detention and torture, it must fail for the reasons discussed above.  In light of the plaintiffs' failure to state a claim under federal law, the court will not exercise supplemental jurisdiction over the state law claims.  See 28 U.S.C. § 1367(c); City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997).

IV. Conclusion

Accordingly, plaintiffs' motion for leave to file a third amended complaint is hereby denied.  The Clerk may close the file.

So ordered this 30th day of September, 2018.

_____/S/ RNC_____
Robert N. Chatigny
United States District Judge